BETH MARTINEZ, on Behalf of Herself and All Others Similarly Situated, Plaintiff and Counterdefendant-Appellee, v. THE COUNTY OF STEPHENSON, Defendant and Counterplaintiff-Appellant.

Second District    No. 2—94—0052

Opinion filed January 5, 1995.

Michael P. Bald, State's Attorney, of Freeport, and Alan W. Cargerman, of Fearer, Nye, Ahlberg & Chadwick, of Oregon, for appellant. ·

Robert K. Slattery, of Freeport, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

We are called upon to decide whether section 47 of the Fees and Salaries Act (section 47) (55 ILCS 45/47 (West 1992)) requires a county to pay *per diem* and mileage fees to residents of that county who are witnesses in criminal trials. We hold that there is no such obligation and that section 47 requires a county to reimburse only witnesses who are required to attend from a foreign county or State. Therefore, we reverse the trial court's declaratory judgment in favor of plaintiff, Beth Martinez, and against defendant, the County of Stephenson (County).

The crucial facts are not in dispute. At all relevant times, plaintiff has resided in Stephenson County. In July 1992, pursuant to a subpoena issued by the County's State's Attorney, plaintiff testified as a State witness in a criminal trial. The defendant in the criminal trial was convicted of domestic battery and sentenced to conditional discharge. The judgment of conviction ordered him to pay certain costs, but the expenses plaintiff now seeks were not included in those costs.

Plaintiff sued the County for a judgment declaring that the county owed her witness fees of $20.40, representing $20 for the one day she attended the trial and 20 cents for each of the two miles she traveled between her home in Stephenson County and the courthouse. Plaintiff invoked section 47, which states:

> "*Every witness attending in any county upon trials in the courts shall be entitled to receive the sum of $20.00 for each day's attendance and 20 cents per mile each way for necessary travel.* For attending in a foreign county, each day's travel shall constitute a day of attendance. Every person attending for the purpose of having his deposition taken shall receive the same per diem and mileage as provided in this section for witnesses in circuit courts:

Provided, no allowance or charge shall be made for the attendance of witnesses aforesaid unless the witness shall make affidavit of the number of days he or she actually attended, and that such attendance was at the instance of one or both of the parties or his attorney. *In criminal cases where a witness shall be required to attend from a foreign county or state,* either before the grand jury or at the trial of the cause in the court, *he shall receive the same per diem and mileage as above provided for witnesses in circuit courts to be paid out of the county treasury* of the county where the crime was committed on the certificate of the clerk of the court where the trial is being had: Provided, he shall make affidavit of the distance traveled, that it was the usually traveled and most direct route, of the number of days' actual travel and attendance, and that such attendance was at the instance of the State's Attorney or the accused, or his attorney, to which shall be added the certificate of the judge that the amount is reasonable and that he was a material witness in the court or before the grand jury." (Emphasis added.) 55 ILCS 45/47 (West 1992).

The County filed an answer and counterclaim asserting that, as a matter of law, it is not liable to plaintiff under section 47. The County does not now assert that plaintiff's application for fees was formally defective in any way. Rather, the County argued at the trial level, and reiterates on appeal, that section 47 does not obligate a county to pay the fees of any witness who resides within the county, at least where (as here) the county has not received or appropriated any money for that purpose. Rather, in criminal cases, a county's liability under section 47 is limited to witnesses who, in the language of the statute, are "required to attend from a foreign county or state."

The trial court deferred plaintiff's motion to certify the cause as a class action. The court ruled that the County was required to pay plaintiff the requested witness fees. The County timely appealed.

On appeal, the County argues that the trial court's construction of section 47 is erroneous. The County acknowledges that the statute's first sentence (emphasized above) appears to be an unqualified command that all witnesses in all cases are to receive fees, regardless of the type of case or the residence of the witness. However, the County observes that the first sentence does not specify the *source* of the compensation to be paid in-county witnesses—*i.e.,* whether these costs are to be paid, if at all, by the public (via the county treasury) or by the defendant. The County contrasts the general language of the first sentence with the specific language of the fourth sentence (which we have also emphasized), which explicitly commands county reimbursement for out-of-county witnesses in criminal cases and makes no mention of in-county witnesses.

The County argues that the specific language of the fourth sentence controls the more general language of the first sentence. The County argues further that the history and purposes of section 47 militate in favor of limiting public reimbursement to witnesses who have attended from outside the county. We agree.

■ Any right to recover witness fees depends on statute. At common law, no witness fees were paid (*Dixon v. People* (1897), 168 Ill. 179, 181), and there is no constitutional right to compensation for performing the public duty to testify in court upon being properly summoned. (*Hurtado v. United States* (1973), 410 U.S. 578, 588-89, 35 L. Ed. 2d 508, 518, 93 S. Ct. 1157, 1164; *Blair v. United States* (1919), 250 U.S. 273, 281, 63 L. Ed. 979, 982-83, 39 S. Ct. 468, 471.) Thus, the proper result in this case is purely a matter of statutory interpretation.

The primary goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. (*Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189.) Although the language that the legislature actually used is our starting point in divining this intent, the words must receive a sensible construction "even though such construction qualifies the universality of its language." (*In re Illinois Bell Switching Station Litigation* (1994), 161 Ill. 2d 233, 246.) The statute should be evaluated as a whole, with each provision being construed in connection with every other section. (*Bonaguro v. County Officers Electoral Board* (1994), 158 Ill. 2d 391, 397.) A court should avoid a construction which renders part of the statute superfluous or meaningless. (*Bonaguro*, 158 Ill. 2d at 397.) Specific language controls over more general language (*People v. Singleton* (1984), 103 Ill. 2d 339, 345), and the enumeration of one thing in a statute implies the exclusion of all others (*Baker v. Miller* (1994), 159 Ill. 2d 249, 260). That which is implied in a statute is as much a part of it as that which is expressed. *Baker*, 159 Ill. 2d at 260.

In ascertaining the intent of the legislature, a court may consider the reason and necessity for the law, the evils to be remedied, and the objects to be attained. (*State Farm Fire & Casualty Co. v. Yapejian* (1992), 152 Ill. 2d 533, 541.) Statutes that address the same subject matter are *in pari materia* and, if possible, should receive harmonious and consistent constructions. (*Williams v. Illinois State Scholarship Comm'n* (1990), 139 Ill. 2d 24, 52.) Statutes in derogation of the common law are to be construed strictly. *Illinois Bell*, 161 Ill. 2d at 240.

We are inclined to agree with the County that, insofar as the first and fourth sentences of section 47 conflict, the specific language of the latter controls over the general language of the former. The

fourth sentence specifically addresses its detailed compensation scheme to the payment of out-of-county witnesses and makes no mention of in-county witnesses. The inescapable implication is that in criminal cases only those witnesses summoned from outside the county are entitled to reimbursement from the county treasury. Moreover, to hold that the first sentence entitles all witnesses in criminal cases to public compensation would render much if not all of the fourth sentence superfluous.

However, we believe that the apparent conflict between the general provision of the first sentence of section 47 and the specific command of the fourth sentence is illusory. As the County observes, the first sentence does not state from whom the witness is to receive compensation; thus, even were we to agree with plaintiff that the first sentence applies to the payment of witness fees in criminal cases, we would not be required to find that fees for in-county witnesses must be paid out of the county treasury. Under the rules of strict construction, we would hold only that the common-law rule against the public compensation of witnesses in criminal cases has been abridged only to the extent spelled out in the fourth sentence of section 47.

Our conclusion that there is no conflict between the first and fourth sentences of the statute is also rooted in a more fundamental consideration. When properly read, the seemingly all-inclusive language of the first sentence applies only to civil litigation and not to criminal litigation at all. The language of the second and third sentences conditions the payment of fees upon the witness having attended "at the instance of *one or both parties* or his attorney." By contrast, the conditions that follow the fourth sentence condition the payment of fees upon the witness having attended "at the instance of *the State's Attorney or the accused.*" The difference in language suggests strongly that the part of the statute from the fourth sentence on was engrafted onto a statute that originally addressed the payment of witnesses' fees in civil cases and that this addition was meant to extend the reach of the statute to the payment of certain witnesses' expenses in criminal cases. As the County observes, this reading gains support from the history of the statute.

We noted some years ago that, originally, witnesses' fees were taxable to a convicted defendant; the judgment for costs was as an incident of the judgment of conviction. (*Corbin v. People* (1893), 52 Ill. App. 355, 357-58; *O'Kane v. People* (1892), 46 Ill. App. 225, 227.) At the time *O'Kane* was decided, the pertinent statute provided that " '[e]very witness attending in his own county upon trials in the courts of record shall be entitled to receive one dollar per day for

each day's attendance and five cents per mile each way for necessary travel.' " (*O'Kane*, 46 Ill. App. at 226, quoting Ill. Rev. Stat. 1891, ch. 53, par. 47.) Although the language of this provision is as all-embracing as that of the first sentence of the current section 47, the court held flatly that an in-county witness could not be reimbursed *by the public* for his expenses in testifying in a criminal trial. *O'Kane*, 46 Ill. App. at 227.

Despite their vintage, *O'Kane* and *Corbin* are still good law. (*People v. Shackelford* (1992), 225 Ill. App. 3d 676, 677-78; *People v. Hanei* (1980), 81 Ill. App. 3d 690, 707; *People v. Brunkhorst* (1980), 80 Ill. App. 3d 815, 817.) Moreover, as these cases suggest, the trial court's broad construction of section 47 would not be harmonious or consistent with division XIV, section 13 of "An Act to revise the law in relation to criminal jurisprudence" (section 13) (725 ILCS 130/13 (West 1992), formerly Ill. Rev. Stat. 1991, ch. 38, par. 180—3), under which witness fees are taxable as costs to a convicted defendant. (See *Brunkhorst*, 80 Ill. App. 3d at 817.) The trial court's reading of section 47 would make *all* witnesses' fees in criminal prosecutions the responsibility of the county, a result that would vitiate section 13 and cause unnecessary conflict between two statutes that are *in pari materia*.

■ Our conclusion that section 47 requires the public compensation of witnesses in criminal cases only when the witnesses attend from outside the county is bolstered by the consideration of the purposes of the legislation and the evils against which it was directed. This purpose was long ago recognized by the appellate court. Explaining the purpose behind the fourth sentence of section 47 (which is not materially different from the present language), the court stated:

> "There is much reason and justice in the idea expressed in this statute, that the burden of the expense of foreign witnesses in criminal cases ought to be borne by the whole people of the county where the crimes are committed, rather than by the foreign witnesses who have to travel long distances, through no fault of themselves, to give evidence as to occurrences out of their neighborhood. If they must bear their expenses in such cases, the burden is necessarily heavier than on the very people who are the more benefitted and the more interested personally in the result of the prosecutions, the people of the county where the alleged crimes are committed." *Troxell v. County of Union* (1911), 161 Ill. App. 173, 177-78.

Another State's supreme court has noted that the preferential treatment of relatively distant witnesses may be justified not only by

their greater expense and the need to conserve public funds, but also by the need to discourage the activities of "professional witnesses," who "make a business of giving testimony, especially in minor criminal offenses. They are found residing around the courthouses and places of trial, and hence the law provides no fees [for nearby witnesses]." *State v. Henley* (1897), 38 Tenn. 665, ___, 41 S.W. 352, 359.

Finally, we observe that the Attorney General has stated that, given the express inclusion of only out-of-county witnesses in the class of those compensable under the fourth sentence of section 47, a State's witness in a criminal case that is tried in his own county may not recover witnesses' fees from the county treasury. (1961 Ill. Att'y Gen. Op. 115.) We note that although opinions of the Attorney General are not binding on the courts, they are entitled to considerable weight if they are well reasoned. (*Bonaguro*, 158 Ill. 2d at 399.) Without adopting all the reasoning of this opinion, we believe that its ultimate construction of the statute is consistent with the statutory language, purpose, and history, and with the case law upon which we have relied.

In summary, we hold that where a witness in a criminal trial is summoned from within the county where the case is tried, section 47 of the Fees and Salaries Act does not entitle that witness to receive any fees from the county. The trial court having held to the contrary, the judgment of the circuit court of Stephenson County is reversed.

Reversed.

McLAREN, P.J., and GEIGER, J., concur.